Good morning, if it pleases the Court. My name is Robert Scappa, and I represent Alexander and Betty HAAGEN, plaintiffs and appellants here. If I may, I'd like to introduce one of my clients, Mr. Alexander HAAGEN, who is sitting in the front row. I would also like to reserve three or four minutes for rebuttal at the end of my comments. Based upon the records and the briefs that have been submitted in this case, it should be clear to every member of this honorable panel that the HAAGENS have proven and SAKS has confirmed breaches of SAKS's obligations and the underlying leases of reporting and recording. Because of those breaches... There's been a jury finding by the judge in that regard. Not a finding of a summary judge, but the judge ever so state a district court. Your Honor, I did not see it in the record in that sense. There was a find they sustained, obviously, SAKS's motion for summary judgment. I understand that. He did it on the fact that there were no damages. But did he ever express a view as to whether there was a breach? No. Even a view? In my opinion, no. I did not see that in the transcript. The result, though, of those breaches, and it doesn't matter if the breach is material or nonmaterial, it doesn't matter to the degree of breach, is that as a matter of right, the HAAGENS were entitled to nominal damages and were entitled to be declared the prevailing party herein. Doesn't it have to be material? You don't think it needs to be material? Well, Your Honor, the materiality is really a question of fact, and it goes to the degree. I don't disagree with what SAKS has indicated in their brief, that in order to terminate the lease, the breach should probably be material. But in this particular case, what is more material than rent? In this case, there were two components of rent. There was the minimum annual rent and there was also the percentage rent, the net rent. But you're saying it is material anyway. It is, Your Honor. But in this case, I don't think that this panel needs to reach that decision. Because this is a de novo review. If you find that there were breaches of SAKS's obligations under this lease of record keeping, that they didn't keep accurate records in the normal course of business to track all sales to, from, or upon the premises, then those are breaches. And every one of those entitles the Hagans to nominal damages. So your answer to Judge Siler is no, for nominal damages purposes, it doesn't have to be material. So you could say that. Is that what you're saying? That is correct, Your Honor. Okay. But and I think the whole issue of nominal damages has been set forth not only in the Civil Code, Section 3360. It's also been embodied recently in the CASI jury instruction 360. And if I may just read that to the Court for a moment, because I think it's illuminating with respect to the issue of nominal damages, because it doesn't quantify the degree of breach. It says, if you decide that defendant breached the contract, but also the plaintiff was not harmed by the breach, you may still award him nominal damages, such as $1. And they cite Sweet v. Johnson and Avena v. Spurlock for those conditions. And they don't judge whether or not the breach was material. I'm sorry, I missed what you were quoting from. What did you say you were quoting from? I was quoting from the Judicial Council of California Civil Jury Instructions, CASI number 360, which basically embodies Civil Code Section 3360. Thanks. The effect of this is that when sacks did not adhere to their accounting responsibility on the lease, is it interferes with the right of the Hagans to receive rent, and it really thwarts their ability to know whether rent is to be paid. To me, it should have been evidence. This lawsuit was filed on December 19th of 2000. It should have been evident to the trial court at the time that this lawsuit was filed, based upon the causes of action that were set forth in the pleadings, that the Hagans may be able to show breach of duty, but they may not be able to show pecuniary loss. And that's the problem that we had in this case, because the reason they couldn't show of documentations of account with sacks. They had exclusive care, custody, and control of those records, and they're the only party under the lease that is obligated to produce those records to track net sales that would rise to percentage rent. The particular sections that are at issue in this case, in the contract, are sections 6.3 and 7.1. And what they require is that sacks have to maintain full and accurate books of account to determine with certainty the sale of all merchandise sold in, upon, or from the premises. The duty to maintain these records, I submit, is absolute. As Larry Cantor, one of our experts, said, you cannot audit what does not exist. As my client, Mr. Hagan, said to me once, how can I put together the pieces of a puzzle if you don't give me all the pieces? I can't finish the picture. And that's, in essence, what happened here. Since there were two components of rent, and this goes to Your Honor's question, one was the minimum rent on an annual basis. And in this particular case, the evidence showed that the Hagans actually did not charge market value for rent because they wanted to believe that there was an upside of getting a share of the net revenue. And they were entitled to 3 percent during the first 15 years. But ultimately, after, despite the bad records when they were reconstituted and gone through by, you know, and with a fine tooth comb, the amount of rent owed was minuscule. The amount of additional rent actually owed was extremely small. That is correct, Your Honor. And Sachs was willing to pay it a long time ago. Well, that's kind of an interesting concept. Sachs was willing to pay it in December of 2002. The rent was for overages that arose from 1996. That was six years after. And that brings up an interesting point, Your Honor, because our initial expert who undertook the audit from 1996 to 1998 was a man named Mr. Fogle. Mr. Fogle started his quest in 1999 and finished it in June of 2000. And those reports were shared with Sachs. Sachs was on notice that he found just about every month and every calendar year that records were insufficient to track the amount of sales. And he also found that in 1996, Sachs had reached the minimum sale of $20 million and the Hagans were entitled to 3 percent over that. It was about $7,000 or $8,000. Sachs chose to ignore that finding. He also found that there were deficiencies almost every year that he audited of about a half a million dollars. Not until Mr. O'Brien, their expert in this litigation, conducted his own audit and concluded in 2002 that they then tendered this payment. Now, this payment is interesting. It was $14,115. The payment arose out of this litigation. To me, that payment is an admission of breach. And to me, the payment also shows that if this case had gone to trial, damages could have been awarded. And the reason for that is that $14,115 came out of the discovery in this case. And if the case had proceeded, one of two things would have happened. They would have had to admit that they owed this amount of money. In turn, the Hagans would have been the prevailing party in the litigation. Or it would have been found by the judge or jury based upon their own experts finding, Mr. O'Brien. So let me just see if I can figure out what all this matters about now. It matters for the attorney's fees. I mean, is that basically what we're disputing over now, that whether they could be the prevailing party for attorney's fees purposes? You agreed that they were the prevailing party, but I understand that agreement to mean given the judgment they were the prevailing party. But you're contesting whether there should have been a judgment in their favor at all. That is absolutely correct. And you're contesting it on the ground that there should have been nominal damages. Correct. At least. And also on the ground that there were actual damages, at least to this $14,000. Absolutely. And then there's a lot of discussion in the brief about termination. What does that have to do with anything at this point? You haven't asked that the lease be rescinded in this litigation. You haven't asked declaratory or injunctive release, by the way, which is a little mystifying to me, but you haven't. All those comments are correct. Would you like me to start with the latter one on the issue of termination? Yes, the latter one. Okay. I mean, wouldn't this all be straightened out if you had just asked, filed a complaint asking for declaratory relief as well as for damages, and then we wouldn't be here? Well, I've wrestled with that since I started working on this appeal, to be quite frank with you, Your Honor, if it was an issue of termination, you could have just filed an unlawful detainer. I'm sorry? You could have just filed an unlawful detainer, because that would have dealt with the issue of possession and termination. But in this case, I think the complaint went further than that. I think it was an effort to truly try to define what records does Sachs have. Can we really audit? Are you really keeping to your bargain? Because Sachs never kept separate books of account. And I think the multiple breaches that have been earmarked tell us that. So it wasn't just an issue of termination. I don't think that that's how the litigation started. It started to contest the findings in the audit. But all I'm trying to clarify is this. To decide this appeal, there is no reason we have to decide any termination question including the materiality of the breach. Is that correct? In my opinion, it's absolutely correct. You don't have to get to the issue of whether or not the Hagans were entitled to terminate this lease. And as I indicated, I think that Counsel for Sachs has correctly stated and kind of misconstrued our point. We're not claiming that we were entitled, based upon the breaches at hand, to terminate this lease. That would have been a question for the trier of fact. But what we are saying is that when we showed that they did not maintain records for three years, that three months within that 36-month period they were missing, the point of sale documents were not even available until October of 1999. You only gave it to us for 13 months. And we're entitled to 36 months at a minimum. You never tracked employee sales, mail sales. You never tracked cross-store sales. You never had maps that showed the historical outlay of the registers. All these issues. You didn't keep journals. You didn't provide us bank statements. It was one on top of another breach. Are they providing this now after you merged them off? Because I would think that would be one of the primary reasons why you file suits to get them into compliance in the future. Your Honor, that's one of my biggest problems with the Court's ruling. And the answer to that question is no. We are under, right now as we speak, undergoing another audit in New York. So if you got nominal damages, at least that would give you some impetus to get them to send you the receipts. Exactly. And this is what haunts me, Your Honor, about the underlying court ruling. If you can just for a moment imagine from my client's perspective. You work all your life to get a prime piece of real estate on Wilshire Boulevard in the heart of Beverly Hills. In April of 1995, you contract with what you perceive to be one of the top high-end retailers in the United States, Sachs. And you enter into a long-term lease that potentially has 55 years, 45 years left on it as we sit here today. And you do this not only to benefit yourselves financially, but you do this for your heirs. Well, unfortunately, the legacy that may be left right now for Mr. Hagan's heirs because of this lawsuit, this lawsuit is a prescription for future litigation. And that's what's going to happen here. This is what I meant when I asked the question before. I would have thought when you filed it, given that that was a large part of the stakes, that you would have pled not only for damages, but for declaratory and injunctive relief. But you didn't. Your Honor, I was at the trial counsel, but you're absolutely right. The pleadings, and as you well know, this went through the initial pleading, a first amendment complaint, and a second amendment. So all that the judge had before him was a plea for damages. And the nominal damages may fill the gap. But if not, since he hasn't really been asked for a declaration as to whether or not, a separate declaration as to whether or not there was a breach, he had no obligation to give it. That's correct, Your Honor. But I'm not so sure declaratory relief would have been the resolution. Because what does declaratory relief tell us? It says declare with the respective rights, obligations, and duties. Well, one thing, it's collateral estoppel next time it happens. So you don't have to litigate it all again. And that's my frustration that I was alluding to. Because right now as it stands, and I don't concede this, but in a future audit, I am going to be faced with the issues of collateral estoppel and res judicata. And the unfairness of the award that sits before us is that Saks can look at this award and say, look, I don't have to produce 36 months of records. The Court declared that I can miss three. The point of sale, I don't have to give you 13 months of it. And by the way, I don't have to track employee sales, mail order sales, and all the rest. The Court never decided any of that. So that would be a difficult conclusion. All he ever decided was that there were no damages. He did not decide, as I understand it, that there was no breach. And if he didn't decide how there was no breach, then how could Saks be dealing with the prevailing party? Because when you – He got the judgment. Judgment in its favor. No damages. Right. That's all you ask for. You only ask for damages, and they got no damages. Right. But to me it's almost really a draw, and maybe that's just a fine line. But that doesn't matter, because that you've conceded. Have you not conceded? That much you've conceded, that if this is the judgment, they're the prevailing party. So that's by the boards. Well, what Alan Utakowski of the Trial Council said, he says, I think so. But listen, Your Honor, you're right. I'm not going to sit up here and say that after the granting of Saks's motion for summary judgment, based upon that, they're not going to be dealing with the prevailing party. I think it's pretty obvious that that's what the Court's going to have to conclude. And you're right. The crux of our case is that in the face of all the breaches that were present, that the Court had an obligation, a duty based upon the case law to award nominal damages. Now, California apparently has a rule that you get nominal damages, but you can't appeal them if they're not given. Yes, Your Honor. We addressed that, actually. And that is absolutely correct. It was addressed at page 9 of our reply. And we cited to two cases, Roland v. Sweet and Still Properties v. CMAG, where it indicated if other rights are involved, these other rights are factors which must be considered in determining whether the error is reversible. And basically, if there is another pecuniary loss, for example, a material breach of the contract coupled with the fact that no damages were awarded, that that's an exception to the general rule. And I think that this case falls squarely within that exception. There's a few other issues I'd like to address because these were raised by SACS in their brief. First one is the issue of under Section 21.1 of the contract where they raise the issue that, look, before you go ahead and terminate this contract, you have to give us notice and an opportunity to cure. We've cited four reasons as to why. But you're not terminating the contract. We already established that there's no issue of termination of contract here. So why are we talking about it? Well, because they claim that it's an excuse basically for every breach that we gave them, that you can't have breach of contract unless you give them notice and an opportunity to cure. But the Court's not concerned about it. We're just talking about termination. Okay. Then I'll reserve the remaining minutes I have for rebuttal. Well, the notice provision is in the clause that specifies what's a material breach. That's why I think that. Correct. That's why it seems to go to the issue of termination rather than what you're arguing here. Right. But my point, I guess, is I wanted to make there were two other reasons that were not in our brief. And I think that the other two reasons are really Mr. Fogle's report that was prepared, and in addition to that, the lawsuit. You cannot have any more notice than the suit itself. And if the Court has no other questions, I'll reserve the remaining three minutes. Thank you. Good morning, Your Honors. The question of the notice and cure provision goes to the heart of the case, even as it's been conceptualized by counsel this morning. Section 21.2, and what I think is important here is SACS has committed no breach that would damage is nominal or compensatory. What Section 21.2 of the lease says is the landlord is permitted to sue in the event of a default. Default is a defined term. Default is defined by 21.1. And what 21.1 does is two things. First, it says as to rent, that's a separate category, and rent is a default. And then it says as to any failure to comply with any other provision of the lease. There is no default, no breach, unless notice has been given. Well, and breach aren't necessarily the same thing. Where are you getting that from? Well, they're equated under this provision. 21.1 says that the occurrence of any shall constitute a default and a material breach. Go ahead. Is there a distinction between a breach and a material breach? Under this lease, they're not permitted to sue unless there's a default, and a default is defined as a material breach. They're equated for purposes of this. I mean, the parties realize this is a 55-year lease. The accounting is incredibly complex. It didn't want to have the landlord coming into court every time a single document got lost or two figures in a long line in an accounting sheet happened to be added up incorrectly. So you have a provision here, which is standard in these types of leases, which says there's no default or material breach unless there's been notice and an opportunity to cure. And it goes on to say that there's no breach unless the allegedly noncompliant behavior occurs for 15 days after the provision of notice. And notice is defined as 21.1B. This is all talking about default. I'm trying to – and then it goes on to say in the event of a default, which is defined specially, in addition to other remedies available to a law or an equity, in addition to, you can terminate and so on. But it doesn't – where does it say anywhere there can't be a breach of this lease other than under Article 21? It's talking about default. 21.1 says in the event of a default, landlord may either terminate or pursue with other remedies. Right. But there has to be a default for there to be a pursuit of remedies. Right. Default is defined by 21.1 as continuation of the allegedly noncompliant behavior. You're making an assumption, which is that a default is not – is any old breach, as opposed to one that will generate these special remedies, i.e. termination. Where are you getting that from? Because this lease is absolutely comprehensive, Your Honor. It talks about – Section 21.1B talks about the failure to observe any other provision in this lease. It deals with the entire universe of possible alleged noncompliance with the terms of the lease. And it says that there's not a default or a material breach unless and until there's been 15 days' notice. But it doesn't say there's not a breach. It only says there's not a material breach. But then 21.1 goes on to say you can only sue in the event of a default. I mean, it's a limitation of remedies, which makes perfect sense in the commercial context that we have here. You don't want to have a landlord coming in and filing suits under a 55-year lease involving incredibly complex accounting provisions for something that is, by definition, by agreement of the parties, by allocation of risk, not trivial. That's because I don't know. But where does it say that you can't sue unless you do this? I think that's clear from 21.1. It says the landlord's remedies are in the event of a default. So that's an exclusive remedy then? Absolutely. Well, except it says exactly the opposite. It says that in the event of a default, in addition to any other remedies available to a law or an equity, it can terminate. No, what it's saying – that's not the way to read it. What it's saying is you can terminate in addition to pursuing other remedies, but it's all conditioned on the event of a default. It makes no sense to read this contract, this lease as a whole, to say that the landlord can come in and sue for a breach that has been deemed by the parties to be nonmaterial. That's totally inconsistent with their reasonable commercial expectations. It doesn't make any sense. And California law makes clear that provisions like this are absolutely enforceable. We cited a case in our brief, the Clark case from the California Court of Appeal, which is virtually identical to this situation. There was a notice and cure provision in that case. The lessor brought a lawsuit for damages, got a jury award for damages, but never filed the notice that was required under that lease. And the California Court of Appeals overturned the judgment and said you have to enforce an unambiguous provision like this. It's a condition to bring in the lawsuit, and there are no damages. It's Clark versus Tidewater. It's been on the books in California for 50 years. It has formed the settled commercial expectations of landlords and tenants throughout the state. Everybody leases against that, and it is the controlling law. It is what this lease was patterned after, and it is enforceable. So because there never was a notice, because there never was a notice that from the Hagans to Saks saying you're in breach of this, you're in breach of that, and an opportunity for a cure, there is no default. There was a failure. There was a lawsuit. And there wasn't Clark as well. If they had given you notice, could you have cured it? Because you didn't have the tapes anyway, right? Well, we have to talk about some of these things we don't think needed to be cured because we don't think they were wrong. We don't think they were noncompliant. With respect to the loss of the three months' worth of register tapes, 21.1b goes on to talk about that. It says in the event of if, I'll quote now, if, however, the nature of such default is such that the same cannot reasonably be cured within such 15-day period, tenants shall not be deemed to be in default if it shall commence such cure thereafter. So with respect to the three months that were lost, obviously they can't be found. So the question is whether Saks goes on to maintain records as was required under the lease, and they did. It was their obligation to prove otherwise, and they didn't. And the record on that, Your Honors, is really quite clear. We put in a tremendous amount of evidence with respect to Saks' compliance with its obligation to track sales under the lease. Our expert put in a report saying that every single component that had to be examined and tracked under the lease was, in fact, tracked. And the state of the record is this. In 1995, Saks created a special computer program that was designed to track all the various components required under the lease. It did that. It generated reports based on that, and those reports were maintained in Saks' computer records. Well, don't we have that? I thought that there was a presentation by experts from the other side saying that mail orders, for instance, are not adequately tracked. Let me address that. I mean, here's the state of play here. Saks' experts basically took the computer program that tracked the reporting of net sales under the lease and reverse engineered it because the originator of the computer program had died during the interim. They reverse engineered it, and they determined that each and every component that was required to be tracked under the definition of net sales in the lease was, in fact, tracked. And then to test that further, they took the actual paper records from 1999 through 2001, and they got them all to reconcile to the numbers in the landlord sales reports, which are the basis of Saks' reporting. All of that is put in the record. In response, all that the Higgins submitted was a report from their experts saying Saks never proved that everything was, in fact, tracked. Well, that's simply a misstatement of the record. It's not an expert opinion where he goes in and looks at the records and says, I took a look at the computer programming that Saks reengineered, and I determined this wasn't tracked, that wasn't tracked. He didn't do anything like that. He simply said Saks never proved it. Well, Saks did prove it. That's an expert opinion. It's not junk science. It's no science at all. It's simply a misstatement of the record, and it's a misapprehension on his part. And not sufficient to create a material issue of fact on that point. So I think where we are is that the notice and cure provision is absolutely enforceable. By definition, there was never – there was – But what does the – I'm having a real problem with this. They went to you and they asked for records. Yes. You gave them records. They said those aren't good enough records. That's not the records we're supposed to have. That's not notice of a breach. This is all before the trials, I understand. They didn't just sue you the day they asked for it. Excuse me. The definition of notice is very clear in the lease. There's a provision that says notice has to be from the landlord to the tenant specifying exactly what the breach is. And that creates rights and remedies. I mean – And there are no letters in which they said you were supposed to give us X and you only gave us Y. Actually, if you take a look in the record – and let me see if I can find the cite to this. They did provide a notice like that in the year 2003 with respect to things – They may not have said on that notice of default of lease, but certainly there was no mystery about what the problem was or what the asserted problem was, at least as to some of the elements of these record questions. You were having a big dispute for some time, as I understand it, about their contention that you were supposed to give them X and that you were giving them Y. And you didn't have X. No? The three months were missing and the point of sale stuff wasn't around and all that. It was all before the case was filed. You knew that that was their problem. Is that not true? I didn't follow everything that you said there. We knew that there were disputes between the parties, but with respect to what they're suing on now, with the allegations that they're pursuing now, there was never a notice that satisfied the requirements of the lease. With respect to the, say, the retention of register tapes for three years, they've never given a notice as to that ever. It's not in their complaint. It's not in anything. They've never given a notice with respect to cross-source sales. I mean, this is the – Meaning what? Meaning that they haven't told you that they think that you don't give them that and that was a breach of the lease? Well, but you have to remember what the point of this is. The point of this is you don't – They wanted to give you a chance to cure it, which they certainly did. And you don't have a breach unless and until you have this notice and you have a 15-day opportunity to cure. Okay. And you don't have 15 days to come up with the three months that you lost somewhere before today? Well, like I said, that one comes within the next clause, which is it's not a curable breach. Well, that isn't what it says. I didn't understand you to be reading that sensibly either. It says if it can't be cured within 15 days, then you can take longer. It didn't say if you can't cure it, that's fine. No. I don't think that's right. If you look at that in the context of this lease, if you lost a single document under the reading you're suggesting, that would be a breach of the lease because it's not curable. And the lease – But it says exactly – I'm having real problems with your argument. It seems to me that this is exactly the opposite of what you're saying. It says if it cannot reasonably be cured within 15 days, 10 shall not be deemed to be in default. If it shall commence such cure within such period and thereafter diligently and continually rectify and cure such default. And you're going to read that to say and if you can't cure it, it's fine. How does it say that? Well, because, I mean, there was a recognition. If you say lose the document, that's not a breach. It says the opposite. It says that if you commence to cure it and thereafter diligently and continuously cure it, then it's okay. It doesn't say if you don't cure it, it's okay. What it means is by taking steps to do what the lease requires for the future. If you can't do it, then you've breached, not that you're fixed. No. I think it's just the opposite. Otherwise, that would impose an extraordinarily draconian punishment for something as innocuous as losing a single piece of – If you breached, it doesn't say that. That's all it says. If you breached, you breached. Now, whether – what the consequences of that is a different question. But if you breached, you breached. It's just the opposite, Your Honor. But in any event, there never was a notice. They don't contend that there was a notice. And that's the long and the short of it. Then with respect to whether there was any noncompliant conduct, there wasn't. What they argued most strenuously below was that Sachs had an obligation to track sales, what they called cross-source sales. And they had an obligation to track that. But the lease is just the opposite. The premise of that argument is that there are certain kinds of goods that are always West Store goods. And they have to be credited to the West Store no matter where they're sold, no matter where they're rung up. And the lease says just the opposite. And the trial judge recognized that the lease said just the opposite. He said there's a gaping hole in this. In the oral argument, he said there's a gaping hole in this lease that's directly contrary to your theory of breach. And that's the inability to control merchandise and where it's rung up. Let me ask you a question that kind of jumps to a bottom line. Yes. The district court didn't decide any of this. He didn't say there wasn't a breach. He didn't say you had to have notice. He didn't say any of that. He said even if there was a breach, even if it was a material breach, there was no damages and they lose. Well, Frank, we don't know what the district court held or what the reason for the district court's holding was. Well, consistent with everything he said. All he said was there's no damage. That's all he ever decided. Well, we argued in the district court that there was no damage and that there was no breach. Okay. And what did he decide? Pardon me? What was the? And the judgment was that he granted summary judgment with no specification of reasons. Though with the oral argument, he made very clear with respect to the theory of breach that they pursued most vigorously, which is this notion of cross-store sales, that their position was absolutely and totally inconsistent with the lease. And that's what I was getting to. He said there's a gaping hole in this lease. And it's the inability to control the merchandise. It all seems to be driving this. And if you look at their expert report, the Cantor report is based almost exclusively on the notion that there are certain goods that had to be credited to the Hagans because they originated in the West Store, even if they were rung up in all good faith elsewhere. And the trial judge said, made very clear at oral argument, that that was an incorrect reading of the lease and that there is no breach on that basis. The other thing that they urged at oral argument was that Sachs had failed to track net sales and had failed to keep all the documents that were required. The judge addressed that very clearly as well. He said they kept everything that was required under the lease. What you're complaining about, plaintiffs, is you believe they need to maintain certain documents that aren't required. And you heard that this morning, that there had to be maps. There had to be this, that, and the other thing. The documents that were required were all maintained. What did the court say about these receipts that she didn't have? The three months? Yes, the three months. I don't remember that being discussed at oral argument at all. It possibly was, and I may be blocking on that, but I don't recall that. I thought that's the main contention here. Is it not the main contention? No, I think that's very much the tail, not the dog. Throughout the trial court proceedings, it was the cross-door sales and the alleged failure to maintain the documents necessary to track sales. Don't we have case law saying that the judge, the court is opposed to summary judgment to tell us? I understand that the statute, the rules don't require, and it's been kind of a struggle, but it seems to me that we have written things suggesting that the mode of disposition here is not appropriate. A lot of the reason why we're all struggling so badly is because the district judge just didn't tell us anything. Well, obviously, it aids your task in review if you know what the trial judge was thinking, although on another level, it doesn't matter because review is independent. Certainly, it would have been preferable if the judge had told everybody what he was thinking, but I think the judge made it very clear in oral argument that their core theory, this theory about cross-door sales, excuse me, cross-store sales, was absolutely and totally inconsistent with the least. What about the point-of-sale documents? This may be a superficial understanding, but my superficial understanding is that there was additional information that was basically captured in a very complicated computer program that nobody knew how to extract the relevant information from because the person who put the program together had died and it took two years to do it. Presumably, the lease had something in mind that wasn't going to take two years to extract in terms of getting the relevant information. So why isn't that? Quite aside from the three months of lost material and quite aside from all the cross-sale dispute, the fact that there's the records are, as a practical matter, inaccessible, why isn't that a problem? It certainly would have been better if Sachs had found it earlier and it would have brought this case to a close more quickly, but it's not a breach. But they have a right to audit. Don't they have a right to information to do the audit? Oh, sure. And if you look at their original audit report, the report prepared by Forte, Mr. Forte of Conin Company, they had the documents they needed. They had the actual underlying register tapes for each of them. And you have to remember, we're only talking about three calendars. I thought they only had them for a certain number of months and some of them were lost. No, well, we're talking about the calendar years 96, 97, and 98. They had all of the register tapes, the underlying register tapes for that entire three-year period except for three months that were lost, and they had no difficulty estimating what the sales were for those three months. And as Mr. Forte agreed and as our expert agreed, the sales didn't get you up over the threshold for percentage rent being due, except for one small exception, 96, which we've covered. So what is this point of sale? The point of sale documents presumably would have showed where the sales were coming from. Was that the point? No, it's just a cash register receipt. I'm sorry. When a sale is rung up, it creates two records. One is the kind of cash register receipt which you get all the time when you go to the store. And then there's an electronic version of that that's recorded and sent to SACS's computer. Actually, sir, it's a check on the other one. Pardon me? It's a check on the other one. These are duplicates of essentially the same thing. A check, a duplicate. It's a computer version, a computer recordation, which is easier to work with. But with respect to the 96 to 98 time period as to which they audited, they had the underlying paper records, complete registry detail for 33 of those 36 months. So there really was no problem with doing the audit. I see that my time has expired. One other point I wanted to make. Just take one minute. Very briefly. Their assumption that nominal damages would necessarily make them the prevailing party is absolutely and totally inconsistent with controlling Supreme Court and Ninth Circuit law. And the case I'd like to refer you to, because they emphasized this heavily in their reply brief, is Berka v. Correll, 302 F3rd 909, where this court just a couple years ago thoroughly reviewed the law in this area. And what happened is the prevailing party determination is made under Section 1717 of the Civil Code. That code section was amended in 1987, subsequent to all the cases they rely on, to make the determination more equitably based and less. Let me just ask you a question. Well, that's what they're suing for at this point. You know, does it matter whether it would necessarily have made them the prevailing party as opposed to the fact that it could have made them a prevailing party? Well, what you'd have to do, if you determined that they were entitled to nominal damages to anything, there needs to be a determination made as to who the prevailing party is. And you'd probably send it back, because your review of that is supposed to be. So it doesn't change the fact that it is a reason to reach the nominal damages issue, even though we might not otherwise reach it, because it could change the conclusion. And so the attorney's view is that seems to me that's all we have to decide. The rest of it really doesn't matter to us at this point. Well, I wanted you to understand what the lay of the land here was, because they were asking you to make a determination that they are the prevailing party. Under Burt Flood, they're not. They can't be. But I still submit that the fundamental problem with their case is that under the remedy 1.2, they didn't comply with the notice and cure provision, and that is a definite – that's part of the definition of what a breach is, and they can only sue for a breach, and therefore, they have no right to any compensatory damages or nominal damages whatsoever. I don't remember whether you had any additional time. I had three minutes. About three minutes. Go ahead. And I will be brief, Your Honor. There is no more material breach in a percentage rent lease than failure to maintain full and accurate books of account on which percent of rents is to be kept. Can you tell us briefly what the story is about these point-of-sale documents? Sure, Your Honor. Point-of-sale, they're electronic backup to the hard copy tape. It is the check and balance, as the Court indicated. The problem here is that they didn't give us those until – they didn't even find them until 2002. We didn't receive them until almost a month before the actual motion for summary judgment. What is your basis for determining that that is a breach of the lease, not to give you that? Because, Your Honor, the lease requires them to give us all documents that track sales in, upon, or from the premises. And the cash register receipts are a specific item that's listed within the lease. Section 6.3 requires them to track all sales at the time that the sale is made. The point-of-sale records are the security for the accuracy of the hard copy. And in this particular case, they didn't even have them for 1996, 1997, 1998. They only provided them to us for October 1999 through December of 2000. The amended complaint extended the time for the recovery through December of 2000, so they only gave it to us for 13 months. They were required to give it to us for 36. Another example, cross-store sales. Their own expert found 14 – just on their own expert, Mr. O'Brien, found 14 occasions where there were cross-store sales of merchandise that should have been rung up on the 800 series tapes that were never rung up. But that seems to be in dispute, whether or not that's covered by the lease. Your Honor, I think when the language – and listen, I'm not going to sit up here and say it's a perfect lease, because we all know after this litigation it's not. But when you talk about good faith and you have an obligation here where it says sales to track in, upon, or from, well, clearly from means if you're taking merchandise from the West Store and you're ringing it up on the East Store, you're not accounting for the West Store's portion of that merchandise that should have been credited towards the Higgins. And that's the problem here. Your Honor, for all the reasons that have been discussed both by counsel and myself, it seems that there are material issues of fact in this case. And because of the potential 45-year term that remains on this lease, I would urge this Court to send this case back for further proceedings and grant the appeal. Thank you, counsel. Thank you very much. Thank you to both counsel. The Court is in recess.
judges: Canby,siler , Berzon